IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA,**

No. 3:04-cr-00005-MO-1

v.

OPINION AND ORDER

**KELLY DAVID ANKENY, SR.,**

Defendant.

**MOSMAN, J.,**

This matter comes before the Court on Defendant's Motion to Vacate or Correct

Sentence pursuant to 28 U.S.C. § 2255 [103]. For the reasons set forth below, I DENY

Defendant's Motion.

**BACKGROUND**

In 2005, Defendant entered a conditional guilty plea to four counts of being a felon in

possession of a firearm and one count of possession of an unregistered sawed-off shotgun.

Defendant appealed his convictions, arguing that three out of the four counts of being a felon in

possession of a firearm were "multiplicitous." The Ninth Circuit agreed but also rejected

Defendant's argument that his Oregon Robbery in the Second Degree ("Robbery II") conviction

was not a predicate "violent felony" under the Armed Career Criminal Act ("ACCA"). On

remand, this Court modified Defendant's sentence to 188 months in prison on the remaining

felon in possession of a firearm count ("Count 3") and 120 months on the possession of an

unregistered firearm count ("Count 4").

In light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551

(2015) ("*Johnson II*"), Defendant filed the present motion on June 6, 2016. Defendant's core

argument is that his Robbery II conviction does not qualify as a violent felony under the ACCA

without the application of the statute's residual clause, which was found to be unconstitutional in

*Johnson II*. *Id.* at 2561. In response, the Government argues that, even without the residual

clause, the Robbery II conviction constitutes a predicate violent felony because it satisfies the

force clause of the ACCA (18 U.S.C. § 924(e)(2)(B)(i)). I held oral argument on the present

motion on October 31, 2016.

## DISCUSSION

For the reasons below, I conclude that Robbery II does not constitute a violent felony as

defined by the ACCA and, thus, cannot serve as a predicate crime under the ACCA.

### I.    Sentence Enhancements Under the ACCA

18 U.S.C. § 922(g) makes it unlawful for anyone who has previously been convicted of

"a crime punishable for a term exceeding one year" to possess or receive any firearm or

ammunition, "which has been shipped or transported in interstate or foreign commerce." A

person who violates § 922(g) and has three qualifying prior convictions for a violent felony or

serious drug offense is subject to imprisonment of not less than 15 years, regardless of the

statutory maximum for the offense. § 924(e)(1). Under the statute, a violent felony is one that:

> (i) has as an element the use, attempted use, or threatened use of physical force against
> the person of another; or
>
> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves
> conduct that presents a serious potential risk of physical injury to another[.]

§ 924(e)(2)(B). In *Johnson II*, the Supreme Court held that the last portion of § 924(e)(2), commonly referred to as the residual clause, is unconstitutionally vague. 135 S. Ct. at 2557 (referring to "otherwise involves conduct that presents a serious potential risk of physical injury to another"). Thus, in order for a person to be subject to a sentence enhancement under § 924(e) based on a prior violent felony conviction, the felony must be one of those enumerated in § 924(e)(2) ("enumerated list") or an element of the felony must include the use or threatened use of force ("force clause").

In this case, Defendant was convicted of being a felon in possession of a firearm (Count Three) and possession of an unregistered sawed-off shotgun (Count Four).[1] Because he had three predicate offenses, his sentence on Count Three was enhanced to a total of 188 months imprisonment. Two of the previous offenses were convictions for controlled substance charges, and they remain valid predicate offenses under § 924(e). The third offense was a conviction for Robbery II, and it is the subject of the current motion.

Defendant argues that Robbery II does not constitute a violent felony under the statute and thus cannot serve as a valid predicate offense. The parties agree that Robbery II is not an offense included in the enumerated list. Therefore, in light of the Supreme Court's ruling in *Johnson II*, the only way Robbery II can qualify as a violent felony is if it contains as an element the use or threatened use of force.

## II.      Requirement of "Violent Force" Under the Force Clause

At first glance, it may appear that the Ninth Circuit has already determined that Defendant's Robbery II conviction qualifies as a violent felony under the force clause. Indeed, on the previous appeal, the Ninth Circuit found that Robbery II by statute "contains the required

---

[1] Count Four is irrelevant for purposes of the present § 2255 motion because Defendant has already served his 120-month sentence on the conviction.

element of use, attempted use or threatened use of physical violence," and thus "constitutes a violent felony for purposes of [the] ACCA." *United States v. Ankeny*, 502 F.3d 829, 840 (9th Cir. 2007). The Ninth Circuit's decision, however, came before the Supreme Court determined that the phrase "physical force" actually means "violent force," or "force capable of causing physical pain or injury to another person. *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010) ("*Johnson I*"). The force must also "be inflicted intentionally, as opposed to recklessly or negligently." *United States v. Lawrence*, 627 F.3d 1281, 1284 (9th Cir. 2010). As such, the fact that a criminal statute contains an element of force is insufficient, by itself, to satisfy the force clause under the ACCA. Therefore, the Ninth Circuit's earlier decision in *Ankeny* is no longer conclusive. I must determine the level of force required to be convicted under Robbery II, and whether that level of force satisfies the requirements of the ACCA's force clause.

The fact that an element of force, by itself, does not satisfy the force clause is further demonstrated in the recent case of *United States v. Dunlap*, 162 F. Supp. 3d 1106 (D. Or. 2016). In *Dunlap*, this Court held that Robbery in the Third Degree ("Robbery III") was overbroad and could not serve as a predicate violent felony conviction for purposes of the ACCA. *Id.* at 1116. In reaching this conclusion, this Court reasoned that even though Robbery III "includes the use or threatened use of physical force as an element," court decisions interpreting the relevant state statute prove that only "minimal force" is required. *Id.* at 1114-15. The decision in *Dunlap* is important because although a distinct crime, Robbery II incorporates and adopts the force

element from Robbery III. *See* Or. Rev. Stat. Ann. § 164.405 (West 2016).[2] Thus, the only remaining question is whether the addition of the elevating conditions under Robbery II converts the force required under the offense to violent force, thereby qualifying Robbery II as a violent felony for purposes of the ACCA.

### III.     Determining Whether a Previous Conviction Constitutes a Violent Felony Under the ACCA

In deciding whether a previous conviction qualifies as a violent felony under the ACCA, a court engages in a process that involves up to three steps. *United States v. Cisneros*, 826 F.3d 1190, 1193 (9th Cir. 2016) (citing *Descamps v. United States*, 133 S. Ct. 2276 (2013)).

First, the court examines the elements of the state predicate offense to determine whether the conviction qualifies as a violent felony under the ACCA. *United States v. Dixon*, 805 F.3d 1193, 1195 (9th Cir. 2015); *Dunlap*, 162 F. Supp. 3d at 1112. In doing so, the court must "presume that the conviction rested upon nothing more than the least of the acts criminalized" without applying "legal imagination" to the state offense. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013) (internal quotation marks omitted). If the state statute's elements are "the same

---

[2] Under ORS § 164.395:

> (1) A person commits the crime of robbery in the third degree if in the course of committing or attempting to commit theft or unauthorized use of a vehicle as defined in ORS 164.135 the person uses or threatens the immediate use of physical force upon another person with the intent of:
>
>> (a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or
>>
>> (b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft or unauthorized use of a vehicle.

Under ORS § 164.405:

> (1) A person commits the crime of robbery in the second degree if the person violates ORS 164.395 and the person:
>
>> (a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or
>>
>> (b) Is aided by another person actually present.

as, or narrower than, those included in the ACCA's definition of violent felony," a violation of the statute is "categorically a violent felony under the ACCA." *Dixon*, 805 F.3d at 1195 (internal quotation marks omitted) (citing *Descamps*, 133 S. Ct. at 2281). If the state statute criminalizes conduct beyond the reach of a violent felony, however, the statute is overbroad, requiring the court to move on to step two. *See id.* at 1196; *Dunlap*, 162 F. Supp. 3d at 1112 (citing *Almanza-Arenas v. Lynch*, 809 F.3d 515, 521 (9th Cir. 2015) (en banc)).

At step two, the court considers whether the statute is "divisible" or "indivisible." *Cisneros*, 826 F.3d at 1193. A divisible statute is one that "sets out one or more elements of the offense in the alternative – for example, stating that burglary involves entry into a building *or* an automobile." *Descamps*, 133 S. Ct. at 2281. A statute worded in the disjunctive is not necessarily divisible. *Dixon*, 805 F.3d at 1198. Rather, in order to be divisible, the statute must supply "multiple, alternative elements of functionally separate crimes," as opposed to "multiple, alternative means" of the same crime. *Id.*; *Rendon v. Holder*, 764 F.3d 1077, 1085-86 (9th Cir. 2014). When the statute is overbroad and divisible, the court moves on to step three of the analysis. *Cisneros*, 826 F.3d at 1193. If the statute is overbroad and indivisible, however, the court's inquiry ends because "a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." *Id.*

At step three, the court applies a "modified categorical approach," which allows the court to "examine certain documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating." *Id.* If the court determines that a defendant was convicted under a portion of the state statute that also "meets the ACCA's definition of 'violent felony,'" then the statute can serve as a valid predicate for the ACCA's sentence enhancement. *Dixon*, 805 F.3d at 1196.

**a.  *Step One: Whether Oregon's Robbery II Statute is Overbroad***

First, I must look at the elements of Robbery II to determine whether it qualifies as a violent felony under the ACCA. Because robbery is not included on the enumerated list, the only way Robbery II can be a violent felony under the ACCA is if it contains as an element the use or threatened use of violent force.

A person commits Robbery II if the person commits Robbery III and the person: "(a) Represents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon; or (b) Is aided by another person actually present." Or. Rev. Stat. Ann. § 164.405. Looking at the text of the statute, there is a "realistic probability" that state officials would apply this statute to conduct that falls outside the ACCA's requirement of violent force. *See Mocrieffe*, 133 S. Ct. at 1685.

There are several realistic scenarios in which a person could commit Robbery II with minimal force[3] while being "aided by another person actually present." *See* Or. Rev. Stat. Ann. § 164.405; *Dunlap*, 162 F. Supp. at 1114 (citing *State v. Johnson*, 168 P.3d 312 (Or. App. 2007)). For example, a person might snatch a victim's purse on the street while another person attempts to distract the victim. Even though the purse snatcher's actions would constitute Robbery II, it is difficult to argue that such actions are "capable of causing physical pain or injury to another person." *Johnson I*, 130 S. Ct. at 1271. In other words, Robbery II criminalizes conduct that is broader than that covered by the force clause, making the statute overbroad.

**b.  *Step Two: Whether Oregon's Robbery II Statute is Divisible***

Because Robbery II is overbroad, I must determine whether the elevating conditions under the statute are divisible. To determine whether the elevating conditions are separate

---

[3] This Court has already concluded that the force requirement under Robbery III does not amount to violent force under the ACCA. *Dunlap*, 162 F. Supp. at 1114-15.

elements as opposed to separate means, I must look to Oregon state law. *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

Of course, looking to state law will necessarily involve an "apples to oranges" comparison. No state case will directly answer the divisibility question, which is a question of application of the ACCA. But, what state law can do is provide guidance as to whether the various subparts of a statute amount to "multiple, alternative elements of functionally separate crimes" or "multiple, alternative means" of the same crime.

The Government relies heavily on *Oregon v. White*, a case in which the Oregon Supreme Court considered whether a defendant's conduct that satisfied both enhancing conditions under Robbery II could support two separate guilty verdicts. 211 P.3d 248, 250 (Or. 2009). Specifically, the government focuses on several statements in *White* that make clear the court viewed the two enhancing conditions of Robbery II as separate elements. *See id.* at 254-55. This is useful, as far as it goes. But the formulation has two parts: (1) multiple alternative elements, of (2) functionally separate crimes. And here is where what *White* gives the Government with one hand, it takes away with the other. Because in the context of deciding whether to merge two guilty verdicts – one for each enhancing condition – the court holds that the Robbery II statute, with its two alternative elements, constitutes a single crime.

By describing multiple elements of a single crime, the controlling state authority leaves open or ambiguous the divisibility question. But, by looking carefully at the rationale in *White*, and the structure of the Robbery II statute, I conclude the statute is divisible.

My conclusion draws support from several sources. First, as noted above, the court in *White* made clear that the elevating conditions from Robbery II constitute different elements that "involve proof of different facts." *Id.* at 254. Moreover, the criminal episode, which satisfied

both paragraphs of § 164.405, supported two different guilty verdicts on two separate jury instructions. Even though these verdicts eventually merged for purposes of sentencing, the fact that they were instructed separately indicates the statute is divisible.

Second, when state law "fails to provide clear answers" on the divisibility of a statute, courts may "peek at the [record] documents" for the "sole and limited purpose of determining whether the [listed items are] element[s] of the offense." *Mathis*, 136 S. Ct. at 2256-57 (quoting *Rendon v. Holder*, 782 F.3d 466, 473-74 (9th Cir. 2015) (internal quotation marks omitted)). Here, the Information states that Defendant represented "by word and conduct that he . . . was armed with a dangerous and deadly weapon." It does not refer to the second elevating condition, providing further support that the statute is divisible. *See id.* at 2257 ("[A]n indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.").

Finally, even though both enhancing conditions "address the same coercive effect on the victim of the threat of violence," they do so in different ways. *White*, 211 P.3d at 257. Unlike a list of related terms, such as "force, violence, or intimidation," the representation of a dangerous weapon involves significantly different proof than the presence of an accomplice. This aspect of the statute also weighs in favor of the statute being divisible.

In opposition to this conclusion, Defendant relies on *Dunlap*; a case in which this Court concluded that the disjunctively worded portions of Robbery III did not make the statute divisible. 162 F. Supp. 3d at 1115-16. The outcome in *Dunlap*, however, is unhelpful in determining the divisibility of Robbery II. First, it goes without saying that Robbery III is not the same offense; it does not even contain the elevating conditions at issue here. Additionally, unlike the disjunctive phrases in Robbery III, a jury would need to unanimously agree that a person (a)

represented he was armed with what purports to be a dangerous weapon, or (b) was aided by another person actually present to convict that person of Robbery II. *See Ramirez v. Lynch*, 810 F.3d 1127, 1134 (9th Cir. 2016). Thus, the divisibility analysis in *Dunlap* does not answer the divisibility question here.

Based on the rationale, if not the result, in *Oregon v.* White, and the text and organizational structure of the statute, I find the enhancing conditions in Robbery II to be divisible. Therefore, I must move to step three to determine what elements of Robbery II Defendant was convicted of violating.

c.   ***Step Three: Whether A Conviction Under Paragraph (a) of Oregon's Robbery II Constitutes a Violent Felony Under the ACCA***

Because Robbery II is overbroad and divisible, I apply the modified categorical approach at step three to "determine what elements of the divisible statute he was convicted of violating." *Cisneros*, 826 F.3d at 1193. As noted above, the Information in this case provides that Defendant "did unlawfully and knowingly threaten the immediate use of physical force" and "did represent by word and conduct that he . . . was armed with a dangerous and deadly weapon." Thus, it is clear that Defendant was convicted under paragraph (a) of § 164.405, rather than paragraph (b).

Although this conclusion is helpful to the government, it is not the end of my analysis. I must still decide whether § 164.405(a), rather than the statute as a whole, is overbroad as compared to the requirements for a violent felony under the ACCA.[4] Again, the Court must look to state law to determine the conduct to which § 164.405(a) applies.

---

[4] In a recent opinion by Judge Hernandez, this Court already concluded that Robbery II is not a crime of violence, as defined under § 4B1.2(a) of the Sentencing Guidelines. *See United States v. Wickland*, No. 3:15-cr-00015-HZ, 2016 WL 6806341, at *3 (D. Or. Nov. 17, 2016). While the definition for a crime of violence under § 4B1.2(a) is very similar to the definition of a violent felony under the ACCA, *see* 18 U.S.C. § 924(e)(2), the two cases pose different questions. The effect of *Johnson II* on sentences enhanced under §4B1.2 of the Sentencing Guidelines is an issue currently before the U.S. Supreme Court. *See Beckles v. United States*, 136 S. Ct. 2510 (2016).

### i. Robbery II's Force Element Alone Does Not Constitute Violent Force

As an initial matter, this Court has already held that the force element under Robbery III – an element that Robbery II incorporates – does not amount to violent force under the ACCA. *Sloan v. Feather*, No. 3:15-cv-00342-MO, 2016 WL 4472997, at *2 (D. Or. Apr. 8, 2016); *Dunlap*, 162 F. Supp. 3d at 1114-15. In reaching this conclusion, the Court relied, in part, on an Oregon case in which a defendant was convicted of Robbery III after snatching the victim's purse and flowers. *See Oregon v. Johnson*, 168 P.3d 312 (Or. App. 2007). Even though the victim did not become aware of the robbery until after she saw the defendant fleeing, the Oregon Court of Appeals concluded that the defendant used sufficient force to be convicted of Robbery III. *Id.* at 313-14. As a result, this Court concluded that the force element under Robbery III requires only minimal force and does not amount to violent force as required under the ACCA. *Dunlap*, 162 F. Supp. 3d at 1114-15. Because Robbery II requires a violation of Robbery III, this conclusion applies in equal force to the force element under Robbery II.

### ii. Robbery II's Force Element Is Conjoined with the Elevating Weapon Condition

The question remains as to whether the elevating circumstance of representing that one is armed with what purports to be a dangerous weapon converts the force required under Robbery II to violent force as required by the ACCA. The central debate surrounding this question, as framed by the parties, is whether the elevating weapon condition can be performed independently from the force element, or whether the two are necessarily conjoined. If conjoined, Robbery II would require the use or threatened use of force to be carried out by the means of the representation that one is armed with what purports to be a dangerous weapon. Such construction would likely satisfy the ACCA's requirement of violent force because a defendant would necessarily be required to use or threaten to use "force capable of causing

physical pain or injury to another person." *Johnson I*, 130 S. Ct. at 1271 (2010). Alternatively, if not conjoined, a person could represent that he or she is armed with what purports to be a dangerous weapon in a way that is completely divorced from the use or threatened use of force. This latter construction would not likely meet the requirement of violent force under the ACCA.

The Government argues that under Robbery II, the threat or use of physical force and the enhancing weapon condition are conjoined. Again, *Oregon v. White* supports the Government's position. The court in *White* noted that it is the "concept of fear or threat of violence that separates robbery from mere theft." 211 P.3d at 256. Indeed, the "use or threat of violence is what causes the victim to part with the property, and that coercive effect is what each of the robbery statutes addresses." *Id.* Although *White* uses the word "violence," its findings are instructive on the level and quality of force required for Robbery II. Essentially, *White* shows that the coercive effect on the victim from the use of force or violence increases by virtue of the robber purporting to have a dangerous weapon or being accompanied by another person. *Id.* at 256-57. The effect of either elevating circumstance "results in different levels of threat that may persuade the victim to part with his or her property with more or less reluctance." *Id.* at 256. Thus, because *White* makes clear that the representation of a weapon increases the coerciveness of the threat or use of force, the force and weapon elements under Robbery II are necessarily conjoined.

Defendant argues that several state decisions indicate a person can satisfy the statute without communicating an intent to use the weapon. The principal case on which Defendant relies is *Oregon v. Lee*, a case in which the Oregon Court of Appeals considered whether the crime of menacing is a lesser included offense of Robbery II. 23 P.3d 999, 1002 (Or. App. 2001). In considering this question, the court noted that under Robbery II, a defendant must "intend to

cause the victim to be aware of the fact that he or she is armed with a dangerous weapon," but not necessarily to cause fear in the mind of the victim. *Id.* at 1003. As such, a robber who represents that he is armed but does not intend that the victim be afraid has committed Robbery II but not necessarily menacing. *Id.* Defendant argues that this conclusion supports the idea that the force element and weapon enhancement under Robbery II are not conjoined.

Defendant's reliance on *Lee* is misplaced. Even though the robber from the hypothetical in *Lee* does not intend that the victim feel fear, the presence of the weapon still elevates the coerciveness of the robber's threat or use of force. *See White*, 211 P.3d at 256 (noting that "the use or threat of violence is what causes the victim to part with the property" and that the coercive effect increases with each gradation of robbery). In other words, the mere representation that the robber is armed with what purports to be a dangerous weapon makes it more likely that the victim will relinquish property in response to the robber's demand. The robber's subjective beliefs are irrelevant. Rather, the linchpin of Robbery II, and what separates it from Robbery III according to *White*, is the objective effect of using or threatening to use force in conjunction with an elevating condition. Absent state authority to the contrary, therefore, the force element and the elevating weapon condition are necessarily conjoined under Robbery II.

### iii.   Because the Force Element and Weapon Condition Under Paragraph (a) Are Conjoined, Defendant's Hypothetical Falls Apart

Up to this point, I have determined that the level of force required to commit Robbery III is minimal but that the elevating weapon condition under Robbery II is necessarily conjoined to the force element of the crime. Thus, the only remaining question is whether there exists a realistic scenario in which a person could satisfy the requirements of Robbery II without using or threatening the use of "force capable of causing physical pain or injury to another person." *Johnson I*, 130 S. Ct. at 1271.

13 – OPINION AND ORDER

Defendant argues that such scenario exists. Specifically, Defendant presents a hypothetical similar to the situation in *Oregon v. Johnson*, where the defendant was convicted of Robbery III after using minimal force to snatch the victim's purse and flowers. 168 P.3d at 313-14. Defendant argues that had the victim seen a gun in the defendant's waistband while he was running away, the elevating condition in Robbery II would be satisfied. In this scenario, however, the representation that one is purportedly armed with a dangerous weapon is completely divorced from the use or threatened use of force. Thus, the hypothetical does not contain what *White* asserts is a necessary part of Robbery II: that the representation of a dangerous weapon objectively elevates the threat to the victim.

Defendant's scenario does not present a "realistic probability . . . that the State would apply its statute to conduct that falls outside" the requirements of a violent felony. *Moncrieffe*, 133 S. Ct. at 1684-85. As such, under the modified categorical approach, paragraph (a) of Robbery II is not overbroad and can validly serve as a predicate offense under the ACCA.

//

//

//

//

//

//

//

//

//

//

**CONCLUSION**

Under the categorical approach, Robbery II is overbroad as compared to the requirements for a violent felony under the ACCA. The statute is also divisible because the elevating circumstances in paragraphs (a) and (b) constitute alternative elements, as opposed to alternative means. Under the modified categorical approach, a conviction under paragraph (a) of Robbery II meets the ACCA's definition of a violent felony, meaning that Defendant's Robbery II conviction remains a valid predicate crime under the ACCA. Accordingly, I DENY Defendant's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255 [103].

DATED this ____13____ day of February, 2017.

/s/ Michael W. Mosman
_____
MICHAEL W. MOSMAN
Chief United States District Judge